Cite as 2025 Ark. App. 567

# ARKANSAS COURT OF APPEALS

DIVISIONS I AND IV

**No.** CV-23-756

| | |
|---|---|
| DON L. KITTLER, JR. <br> APPELLANT <br><br> V. <br><br> ENTERGY ARKANSAS, LLC <br> APPELLEE | **Opinion Delivered**: November 19, 2025 <br><br> APPEAL FROM THE ARKANSAS PUBLIC SERVICE COMMISSION <br><br> AFFIRMED |

## MIKE MURPHY, Judge

This case comes to us as an appeal of an order from the Arkansas Public Service Commission (the Commission). It is about a tariff imposed on a farm that has a large solar-energy-generating facility. The issues revolve around whether Entergy Arkansas, LLC (Entergy), followed the Commission's Net Metering Rule 2.03 when it imposed a minimum fee on the farm in certain months.

We affirm the Commission's order.

### I. *Background*

Don Kittler, Jr. (Kittler), owns Kittler Farms in Lonoke and Prairie Counties. Since 2019, Kittler has owned and operated a solar-energy-generating facility to provide energy for his rice-, soybean-, and corn-growing operation. The solar facility is located on fifteen acres in Lonoke County and was designed to provide 90 percent of Kittler Farms's

electricity. Much of this electricity is used in water-pumping wells, which are located many miles apart.

This case is about the credits Kittler receives through his solar-energy-generating facility. This concept is known as "net metering," which this court wrestled with in *Petit Jean Electric Cooperative Corp. v. Arkansas Public Service Commission*, 2022 Ark. App. 215, at 2–3, 646 S.W.3d 123, 128. In that case, we summarized the concept:

> Net metering is a method of billing electric-utility customers who consume electrical power generated by their own renewable-energy equipment (such as wind turbines or solar panels) as well as power supplied by an electric utility. Net-metering customers may generate more electrical power by their own renewable-energy equipment than the customer consumes. In this event, the net-metering customer transmits the excess renewable energy to the electric utility's grid, where it is consumed by other customers (whether or not they also have net-metering equipment). At the end of the electric utility's billing period, the net-metering customer is billed for the kilowatt hours (kWh) of grid power that the customer consumed and credited for the kWh of any excess renewable energy that the customer supplied to the grid.

During many months of the year, Kittler's solar array generated much more electrical power than his farm consumed, meaning that he received credits surpassing what he was billed for his energy usage. Credits given to a customer above and beyond what the customer was billed for their usage are known as "net excess-generation credits." In other words, if the customer's solar array supplied $100 worth of electricity to the grid, but the customer consumed $70 worth of electricity, then the customer would receive $30 in net excess-generation credits.

Public utility rates are also known as tariffs, and the method of determining a tariff as billed to a customer is by using a rate schedule. The rate schedule at issue is Rate Schedule No. 14—Agricultural Water Pumping Service (AWP Rate Schedule). The version of the

AWP Rate Schedule in effect when this claim was filed became effective on February 1, 2019. Kittler entered into an agreement under section 14.5 of the AWP Rate Schedule:

**14.5.  OPTIONAL MONTHLY RATE (B)**

Customer may elect to be billed under the following Monthly Rate at the beginning of a season or when service is connected each season. After such election, the billing during the season will be on the rate so elected and the basis for billing will not be changed from the Optional Monthly Rate (B) to the Seasonal Rate (A) (or vice versa) during any one season.

**14.5.1.  Rate**

| Billing Item | Rate |
|---|---|
| Energy Charge per kWh: | |
| 1st 402 kWh/kW of Billing Load | $0.07979 |
| All additional kWh | $0.05647 |

**14.5.2.  Minimum**

| Billing Item | Rate |
|---|---|
| Demand Charge per kW: | |
| All kW of Billing Load | $6.12 |

**14.5.3  Billing Amount**

The Billing Amount will be the greater of the amounts calculated in § 14.5.1 or § 14.5.2 above. […]

**14.5.4.  Billing Load**

The Billing Load (kW) for each month is the maximum kW supplied during the 15-minute period of customer's greatest use during the month but not less than 11 kW.

*See* https://www.entergyarkansas.com/wp-content/uploads/2024/11/eal_ap.pdf.

At this point, it is important to note that there is a significant difference between the energy charge, which applies to kilowatt hours (kWh), and the demand charge, which applies to kilowatts (kw). These units of measurement are related, but they are not the same.

3

On an electricity bill, the kW measurement shows the rate of electricity the customer uses, and the kWh measurement shows how much the customer actually used.

This is important because the energy charge under AWP Rate Schedule § 14.5.1 (the "Energy Charge") is calculated on the basis of kilowatt hours, whereas the minimum charge under AWP Rate Schedule § 14.5.2 (the "Minimum Charge") is based on kilowatts. The reason Entergy bills the greater of the two figures is to ensure that it receives funds for the maintenance of the grid and other fixed costs needed to serve customers, which net-generation customers use.

The issues in this case revolve around whether Entergy violated the Net Metering Rules of the Commission in its application of AWP Rate Schedule § 14.5.3 when it billed a Minimum Charge to Kittler in months that he produced excess net-generation credits.

When this claim was filed, Rule 2.03(A) stated: "Any new or additional charge that would increase a net metering customer's costs beyond those of other customers in the rate class shall be filed by the electric utility with the Commission for approval. The filing shall be supported by the cost/benefit analysis described in Rule 2.03(B)." *See* https://www.sos.arkansas.gov/uploads/rulesRegs/Arkansas%20Register/2007/dec_2007/126.03.07-006.pdf.

There were months in which Kittler produced a large number of net excess-generation credits because the solar array produced far more electricity than the farm consumed. In those months, the Energy Charge would be $0, so Entergy would bill a Minimum Charge.

On July 9, 2021, Kittler and Brantley and Sons, Inc.,[1] filed a complaint for improper billing procedures against Entergy in the Arkansas Public Service Commission. The Commission held a hearing on July 27, 2022. During that hearing, Kittler admitted to the record prefiled testimony of William Ball, Craig Michael Shelton, and Paul Chesser. Entergy admitted to the record the prefiled testimony of Matthew Klucher and Amy Westmoreland. The general staff of the Commission also admitted to the record the prefiled testimony of Jeffrey Roberts. Kittler's attorney cross-examined Klucher, Westmoreland, and Roberts briefly, but Entergy and the general staff of the Commission relied solely on the prefiled testimony of their witnesses.

On June 9, 2023, the Commission filed Order No. 7 in which it denied Kittler's complaint alleging wrongful billing practices. The Commission found that Entergy applied the different components of the AWP Rate Schedule to its bills in the same manner to all customers under that rate schedule and that Entergy had not engaged in improper billing procedures.

Kittler filed a timely application for rehearing. Applications for rehearing are deemed denied after thirty days. Ark. Code Ann. § 23-2-422(d) (Repl. 2015). The Commission then entered Order No. 8, which granted the petition for rehearing "solely for the purpose of further consideration." This was to ensure the petition was not deemed denied under the thirty-day rule pursuant to the Commission's Rules of Practice and Procedure. APSC Rules of Prac. and Pro. 4.14(e). Order No. 8 is not on appeal. On October 31, 2023, the

---

[1]Brantley and Sons, Inc., did not join the petition for rehearing or this appeal.

5

Commission entered Order No. 9 in which it denied Kittler's petition for rehearing, holding again that Entergy had correctly applied the provisions of the rate schedules to Kittler's bills.

This appeal followed.

## II. *Petition for Rehearing at the Commission*

As a threshold issue, Entergy argues that Kittler did not include any of his points on appeal in his petition for rehearing before the Commission; therefore, this court cannot address the merits of the appeal.

The statute governing appeals of Commission decisions states, "No objection to any order of the commission shall be considered by the Court of Appeals unless the objection shall have been urged before the commission in the application for rehearing." Ark. Code Ann. § 23-2-423(c)(2) (Repl. 2015).

This court addressed this statute in *Petit Jean*. In that case, we did not reach the merits of several of the parties' arguments because the arguments were not adequately raised in the petition for rehearing made to the Commission. In a petition for rehearing before the Commission, "[c]onclusory assertions and general statements do not rise to the level of developed argument that preserves an issue for appellate review." *Petit Jean*, 2022 Ark. App. 215, at 29, 646 S.W.3d at 141. Further, arguments raised for the first time in footnotes, arguments that were not advanced in the petition for rehearing, and arguments that made only "passing references to the takings clauses in the state constitution and federal constitution" were not preserved. *Id.* Further, "scant references" are insufficient to bring an argument for rehearing before the Commission. *Consumers Utils. Rate Advoc. Div. v. Ark. Pub. Serv. Comm'n*, 99 Ark. App. 228, 250, 258 S.W.3d 758, 775 (2007).

6

Kittler argues that all his points on appeal are preserved because the petition for review stated, "Complainant re-raises and preserves for appellate review all issues of fact and law that were contested and developed in the proceedings before the Administrative Law Judge and seek rehearing on the ALJ's five rulings on the motions submitted." This is a general statement without developed argument that does not preserve "all issues of fact and law" for review. *Petit Jean*, 2022 Ark. App. 215, at 29, 646 S.W.3d 141.

Although that general statement does not preserve any argument on appeal, Kittler did include a slightly more detailed "succinct summary" of his arguments in the petition for rehearing. That summary follows in its entirety:

> Customers brought the Complaint to have the Commission declare the proper application of Net-Metering to the tariff provision at issue, Section 14.5.3 of the Agricultural Water Pumping Service (AP) Rate Schedule. Customers' contention is that EAL is special-billing Customers by wrongfully adding charges that are not billed to other customers. Customers' position is that for meter accounts where an "Energy Charge" is to be billed, such meter accounts may be settled by applying available net excess generation. For Customers' meter accounts where a "Minimum" amount is to be billed, such meter account should be settled without applying available net excess generation. However, EAL insists on taking a special billing step for Customers' accounts after the Energy Charge is settled. EAL chooses to calculate and bill a "Minimum." And further, EAL takes a special billing step for Customers' accounts when a minimum bill is correctly applied. EAL retires net excess generation credits for energy use provided to other customers with the minimum bill. These two practices are the subject of Customers' Complaint.

Kittler's first point on appeal is whether the Commission should have made more detailed factual findings in Order No. 7. The sufficiency of the Commission's factual findings was not even hinted at in the petition for rehearing. Therefore, we cannot address the merits of this point.

The second issue on appeal is whether net-metering customers are wrongfully being treated differently from non-net-metering customers when they are charged a Minimum Charge in months in which they are entitled to net excess-generation credits. Kittler stated in his petition, "Customers' contention is that EAL is special-billing Customers by wrongfully adding charges that are not billed to other customers." A few sentences later, Kittler states, "However, EAL insists on taking a special billing step for Customers' accounts after the Energy Charge is settled. EAL chooses to calculate and bill a 'Minimum.'" We hold that this is adequate to bring the argument before the Commission as required by *Petit Jean* and *Consumers Utilities*. Therefore, we will discuss the merits of Kittler's second point on appeal in detail below.

The third point on appeal is that by applying a net excess-generation credit and billing the minimum charge, Entergy is taking Kittler's property (the credits) for no value. The only statement from the petition for rehearing that could arguably apply to this point on appeal is: "EAL retires net excess generation credits for energy use provided to other customers with the minimum bill." This sentence does not develop any argument and does not invoke the constitution or even use the word "taking." This qualifies as a "passing reference" or a "scant reference" that we rejected in *Petit Jean* and *Consumers Utilities*. That sentence from the petition for rehearing was not clear enough to put the Commission on notice of Kittler's argument and preserve it for appeal, and it did not contain any level of developed argument. For that reason, we likewise will not address the merits of Point III.

### III. *Discriminatory Billing*

We now move to Kittler's second point on appeal—whether Entergy treats net-metering customers different from non-net-metering customers under AWP Rate Schedule § 14.5.

This court's review of Commission decisions is limited by Arkansas Code Annotated section 23-2-423(c), which provides:

> (3) The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive; and

> (4) The review shall not be extended further than to determine whether the Commission's findings are supported by substantial evidence and whether the Commission has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or the State of Arkansas.

The Commission has wide discretion in choosing its approach to rate regulation, and this court does not advise the Commission on how to make its findings or exercise its discretion. *Petit Jean*, 2022 Ark. App. 215, at 11, 646 S.W.3d at 132; *see also Consumer Utils. Rate Advoc. Div. of Att'y Gen.'s Off. v. Ark. Pub. Serv. Comm'n*, 86 Ark. App. 254, 263, 184 S.W.3d 36, 42 (2004).

To establish an absence of substantial evidence, "the appellant must demonstrate that the proof before the Commission was so nearly undisputed that fair-minded persons could not reach its conclusion." *Petit Jean*, 2022 Ark. App. 215, at 12, 646 S.W.3d at 132.

This court can reverse the Commission when it acted arbitrarily or capriciously. "Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis, and something more than mere error is necessary to meet

9

the test." *Id.* (quoting *Entergy Ark., Inc. v. Ark. Pub. Serv. Comm'n*, 104 Ark. App. 147, 154, 289 S.W.3d 513, 520 (2008)). "To set aside the Commission's action as arbitrary and capricious, [an] appellant must prove that the action was a willful and unreasoning action, made without consideration and with a disregard of the facts or circumstances of the case." *Id.*

In Order No. 7, the Commission found "no error in how [Entergy] is applying its tariffs[.]"

Kittler's main argument is that AWP Rate Schedule § 14.5 runs afoul of Net Metering Rule 2.03 when applied to net-metering customers. Rule 2.03 states that "[a]ny new or additional charge that would increase a net metering customer's costs beyond those of other customers in the rate class shall be filed by the electric utility with the Commission for approval." *See* https://www.sos.arkansas.gov/uploads/rulesRegs/Arkansas%20Register /2007/dec_2007/126.03.07-006.pdf.

As discussed further below, there is substantial evidence that the Minimum Charge under AWP Rate Schedule § 14.5.2 is not a "new or additional charge" that is assessed only to net-metering customers. Perhaps even more importantly, this iteration of Rule 2.03 was in effect at least as early as 2007. Even if the rate set forth in AWP Rate Schedule § 14.5 does establish a new or additional charge for a net-metering customer, the version applied to Kittler was enacted in 2019. Kittler did not argue or present any evidence that Rate Schedule No. 14 was not filed properly or that the Commission had not properly approved it, and this court does not advise the Commission on how to make its findings or exercise its discretion. *Petit Jean*, 2022 Ark. App. 215, at 11, 646 S.W.3d at 132.

10

Further, Net Metering Rule 2.04(A) states, "On a monthly basis, the net metering customer shall be billed the charges applicable under the currently effective standard rate schedule and any appropriate rider schedules. *Under net metering, only the kilowatt hour (kWh) units of a customer's bill are affected.*"

https://www.sos.arkansas.gov/uploads/rulesRegs/Arkansas%20Register/2007/dec_2007/126.03.07-006.pdf (emphasis added).

As a reminder, Kittler was to be charged the greater of:

### 14.5.1. Rate

| Billing Item | Rate |
|---|---|
| Energy Charge per kWh: | |
| 1st 402 kWh/kW of Billing Load | $0.07979 |
| All additional kWh | $0.05647 |

### 14.5.2. Minimum

| Billing Item | Rate |
|---|---|
| Demand Charge per kW: | |
| All kW of Billing Load | $6.12 |

Only the Energy Charge under section 14.5.1 involves kilowatt hours. Under Net Metering Rule 2.04(A), the Minimum Charge was not affected by the existence of his excess net-generation credits because it is not measured in kilowatt hours.

Kittler characterizes his treatment by Entergy as "discriminatory" and defines that to mean a "failure to treat all alike under substantially similar conditions." As reiterated many times by various witnesses in the hearing, Kittler is being treated exactly the same as all other customers who are billed under AWP Rate Schedule § 14.5. For each customer who has elected to be billed under AWP Rate Schedule § 14.5, Entergy calculates an Energy Charge under § 14.5.1 and a Minimum Charge under § 14.5.2. Entergy then bills the customer the

higher of the two numbers, as set forth in § 14.5.3. There is no discrimination in the record. There was testimony that this is how all customers "including other net-metering customers, are billed across a number of [Entergy's] Commission-approved rate schedules."

Kittler argues that he is being charged both the Minimum Charge and an Energy Charge in months that he has excess net-generation credits and that this practice is discriminatory against net-metering customers. First, he is not being charged both. Rate Schedule No. 14 clearly explains how Kittler's bill is calculated each month. Again, we will not advise the Commission as to how to make its findings or exercises its discretion. *Consumer Utils.*, 86 Ark. App. at 263, 184 S.W.3d at 42.

There was substantial evidence that Entergy applied AWP Rate Schedule § 14.5 correctly, and we affirm the Commission's conclusions in Order No. 7.

Affirmed.

ABRAMSON, TUCKER, THYER, and WOOD, JJ., agree.

BROWN, J., concurs.

**WAYMOND M. BROWN, Judge, concurring**. I agree that this case must be affirmed, but I disagree that any of Kittler's arguments were preserved for our review.

To preserve an issue for appeal, the appellant must raise the objection in a petition for rehearing before the Commission.[1] An issue is preserved only if the statement in the petition contains some level of developed argument.[2] I would hold that Kittler's petition

---

[1]Ark. Code Ann. § 23-2-423(c)(2) (Repl. 2015).

[2]*Petit Jean Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 2022 Ark. App. 215, at 29, 646 S.W.3d 123, 141.

for review contained only general statements and scant references that we found to be insufficient in *Petit Jean*. Therefore, I would not have addressed the merits of his second point on appeal.

For these reasons, I concur.

*Catlett Law Firm PLC*, by: *H. Bradley Walker*; and *Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Entergy Services LLC*, by: *Kimberly K. Bennett* and *Jana K. Law*; and *Quattlebaum, Grooms & Tull PLLC*, by: *Michael B. Heister*, for appellee.